1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8
9
10
11
12
13
14
15

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>                  Plaintiff,<br><br>     v.<br><br>THE SEARCH PEOPLE ENTERPRISES LTD., a British Columbia, Canada, corporation; MEHTABJIT SINGH TEJA, a/k/a RONNIE TEJA, an individual; and DOES 1–10,<br><br>                  Defendants. | No. 2:22-cv-1113<br><br>**COMPLAINT** |

16

## COMPLAINT

17      1.      Plaintiff Microsoft Corporation ("Microsoft") brings this Complaint against

18  Defendants The Search People Enterprises Ltd., Mehtabjit Singh, a/k/a Ronnie Singh, and Does

19  1–10, alleging claims for (1) contributory copyright infringement; (2) trademark infringement;

20  (3) false designation of origin and false and misleading representations and descriptions of fact;

21  and (4) trade dress infringement.

22

23      **I.      INTRODUCTION**

24      2.      Defendants are prolific distributors of black market access devices to Microsoft

25  software that they unlawfully advertise to consumers as genuine software.  As a major part of

26  their sales, Defendants instruct their customers to acquire, install, and activate copies of

27

COMPLAINT - 1
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Microsoft software with the access devices.  This software is from counterfeit download sites or Microsoft sites that require the purchase of licensed software.

3.      Defendants use Microsoft's trademarks and trade dress in their marketing and sales material without authorization to deceive consumers about the characteristics, origin, and authenticity of the software.  Defendants further deceive their customers into believing that this software is legally licensed for them to use when it is not.

4.      The access devices trafficked by Defendants consist of Microsoft product activation keys and tokens for software.  These keys and tokens are separated from the genuine, licensed Microsoft software they were intended and authorized to activate and sold on a "stand-alone" basis separate from that software ("decoupled product keys" or "decoupled tokens").

5.      Decoupled product keys and decoupled tokens do not constitute or represent licenses for Microsoft software.  They are merely technology tools that Microsoft provides its customers and supply chain partners to access, install, and activate copies of legally licensed software.  When these tools are separated from legally licensed software, disassociated with the devices on which they were authorized to be used, they do not have any independent value other than to deceive unwitting consumers into acquiring copies of counterfeit and unlicensed software.

6.      Defendants have reaped substantial profits from their unlawful sale of unauthorized access devices, all while falsely holding themselves out to be legitimate distributors of licensed Microsoft software.  Defendants knew, or had reason to know, that they were facilitating, contributing to, and causing the unlawful copying and distribution of counterfeit and unlicensed Microsoft software.

7.      Defendants' unlawful sale of unauthorized access devices hurts customers, legitimate commerce, and the software business.  Customers are deceived into purchasing counterfeit and unlicensed copies of software when they think they are buying genuine, licensed software.  Businesses selling genuine licensed software are harmed when potential customers are

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

lured away by lower-priced non-genuine software offerings.  Microsoft is harmed by Defendants' misuse and theft of its intellectual property.

8.      To put a stop to Defendants' scheme and associated unlawful activities and hold them accountable, Microsoft seeks an order permanently enjoining Defendants from further sales of unauthorized access devices and an award of money damages for the substantial harm they have caused.

## II.      PARTIES

9.      Plaintiff Microsoft is a Washington corporation with its principal place of business in Redmond, Washington.  Microsoft develops, markets, distributes, and licenses computer software, among other products and services.

10.      On information and belief, Defendant The Search People Enterprises Ltd. ("TSPE") is a British Columbia, Canada, corporation with its principal place of business in Vancouver, Canada.

11.      On information and belief, Defendant Mehtabjit Singh Teja, a/k/a Ronnie Teja, is an individual currently residing in British Columbia, Canada.  On information and belief, Defendant Teja is a director, president, and secretary of Defendant TSPE.

12.      Defendants Does 1–10 are parties whose identities are presently unknown to Microsoft.

13.      On information and belief, Defendants TSPE, Teja, and Does 1–10 conspired and operated in concert with each other to advertise and sell Microsoft-branded products and services, including the products and services described in paragraph 4, through their websites softwarekeep.com ("SoftwareKeep Website"), softwarekeep.ca ("SoftwareKeep Canada Website"), saveonit.com ("SaveOnIT Website"), and catsoft.co ("Catsoft Website") (collectively, the "Websites").  The SoftwareKeep Website lists addresses in Point Roberts and Seattle, Washington.  The SoftwareKeep Canada Website lists address in Seattle, Washington and Vancouver, British Columbia, Canada.  The SaveOnIT Website lists addresses in Seattle,

COMPLAINT - 3
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Washington and Vancouver, British Columbia, Canada.  The Catsoft Website lists addresses in

Vancouver, British Columbia, Canada, and San Diego, California.

### III.     JURISDICTION & VENUE

14.     The Court has subject-matter jurisdiction over the federal claims alleged herein

pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a).

15.     The Court has general personal jurisdiction and specific personal jurisdiction over

Defendants because Defendants conduct systematic and continuous business in this District;

Plaintiff's allegations arise from action and contact by Defendants in this District; Defendants

committed a substantial part of the acts of infringement in the Complaint within this District; and

Defendants injured Plaintiff in this District.  At all times, Defendants regularly and

systematically transacted business within the State of Washington and the wrongful conduct

described herein reached Washington Consumers.  Defendants also derive substantial revenue

from Washington residents.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims herein occurred in this

District.

### IV.     FACTS

**A.     The Negative Impact of Software Piracy on Consumers, Legitimate
Businesses, and Intellectual Property Rightsholders**

17.     The U.S. economy loses billions of dollars in revenues each year from software

piracy—namely, the unauthorized and unlawful copying, downloading, and distributing of

copyrighted and trademarked software and related components.  Software developers, like

Microsoft, create hundreds of thousands of technology jobs and are significant drivers of

economic growth across the United States and globally.  The theft of intellectual property

negatively impacts software companies' revenues and the economic growth of countries around

the world.

COMPLAINT - 4
(2:22-cv-1113)

18.     Software piracy also victimizes consumers who believe they are purchasing genuine, fully licensed products.  As occurred in this case, distributors of pirated software deceive consumers by going to great lengths to make the software appear to be licensed and authorized by Microsoft and advertising it as such.

19.     Legitimate technology businesses that follow the rules are also harmed by software piracy because their business is displaced by cheaper offerings from dishonest vendors who do not acquire and pay for licensed software.

**B.      Microsoft's Intellectual Property**

20.     Microsoft develops, advertises, markets, distributes, and licenses computer software programs.  One of the methods that Microsoft uses to distribute software is digital downloads through Microsoft.com and authorized electronic-software distribution vendors.

21.     Microsoft sells licenses to use its software; it does not sell the software itself. Microsoft's software licensing agreements make clear to end users that they are acquiring a license to use the software and not title to the software.  The licensing agreements contain limitations around the use of the software and place restrictions on transfer of the software license and accompanying components.

22.     Microsoft's software programs include the following:

a.      **Microsoft Office 2019:**  Microsoft has developed, and advertises, markets, distributes, and licenses a suite of productivity software for business, home, and education use called Microsoft Office 2019 ("Office 2019").  Microsoft holds valid copyrights in three versions of Office 2019 relevant to this case:  Office Professional Plus 2019, Office Professional 2019, and Office Home & Business 2019.  Microsoft's copyrights were duly and properly registered with the United States Copyright Office, bearing the numbers TX 8-640-200, TX 8-748-909, TX 8-777-138, respectively.

b.      **Microsoft Office 2021**:  Microsoft has developed, and advertises, markets, distributes, and licenses a suite of productivity software for business, home, and education use called Microsoft Office 2021 ("Office 2021").  Microsoft holds valid copyrights in

COMPLAINT - 5
(2:22-cv-1113)

two versions of Office 2021 relevant to this case:  Office Professional 2021 and Office Home & Business 2021.  Microsoft's copyrights were duly and properly registered with the United States Copyright Office, bearing the numbers TX 9-068-091 and TX 9-068-122, respectively.

c.   **Microsoft Project 2019:**  Microsoft has developed, and advertises, markets, distributes, and licenses a software program of project management called Microsoft Project 2019 ("Project 2019").  Microsoft holds a valid copyright in Microsoft Project Professional 2019, which encompasses all versions of Project 2019.  Microsoft's copyright in Microsoft Project Professional 2019 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-727-066.

d.   **Microsoft Visio 2019:**  Microsoft has developed, and advertises, markets, distributes, and licenses a software program for diagramming and vector graphics called Microsoft Visio 2019 ("Visio 2019").  Microsoft holds a valid copyright in Microsoft Visio Professional 2019, which encompasses all versions of Visio 2019.  Microsoft's copyright in Microsoft Visio Professional 2019 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-727-070.

e.   **Microsoft Windows 10:**  Microsoft has developed, and advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 10 ("Windows 10").  Microsoft holds a valid copyright in Windows 10 (Spring 2020 Update), which encompasses all other versions of Windows 10.  Microsoft's copyright in Windows 10 (Spring 2020 Update) was duly and properly registered with the United States Copyright Office, bearing the number TX 8-890-546.

f.   **Microsoft Windows 11:**  Microsoft has developed, and advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 11 ("Windows 11").  Microsoft holds a valid copyright in Windows 11.  Microsoft's copyright in Windows 11 was duly and properly registered with the United States Copyright Office, bearing the number TX 9-110-306.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

23.     Microsoft has developed, advertises, markets, distributes, and licenses the above software and related components using various trademarks and service marks, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.  Relevant to this case, Microsoft has duly and properly registered trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including:

a.     "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236 for, inter alia, computer programs and computer programming services.

b.     "WINDOWS," Trademark Registration No. 1,872,264 for, inter alia, computer programs and manuals sold as a unit.

c.     "MICROSOFT CORPORATE COMPOSITE LOGO," Trademark and Service Mark Registration No. 4,552,363, for, inter alia, computer software.

d.     "MICROSOFT CORPORATE LOGO," Trademark and Service Mark Registration No. 4,560,827, for, inter alia, computer software.

e.     "OFFICE 2012 DESIGN," Trademark and Service Mark Registration No. 4,459,826, for, inter alia, computer software.

f.     "OFFICE WITH OFFICE 2012 DESIGN," Trademark Registration No. 4,456,462, for, inter alia, computer software.

g.     "EXCEL," Trademark Registration No. 2,942,050, for, inter alia, computer software.

h.     "POWERPOINT," Trademark Registration No. 1,475,795, for, inter alia, computer software.

i.     "ONENOTE," Trademark Registration No. 2,844,710, for, inter alia, computer software, also registered under Registration No. 4,251,355.

j.     "OUTLOOK," Trademark Registration No. 2,188,125, for, inter alia, computer software, also registered under Registration Nos. 4,255,129 and 4,423,056.

COMPLAINT - 7
(2:22-cv-1113)

1     k.     "MICROSOFT ACCESS," Trademark Registration No. 1,741,086, for,

2  inter alia, computer software.

3     l.     "PROJECT LAUNCH ICON (2012)," Trademark Registration No.

4  4,355,450, for, inter alia, computer software.

5     m.     "PROJECT LAUNCH ICON (color)," Trademark Registration No.

6  5,068,834, for, inter alia, computer software.

7     n.     "VISIO," Trademark Registration No. 1,838,372, for, inter alia, computer

8  software, also registered under Registration No. 2,063,786.

9     **C.     Microsoft's Anti-Piracy Tools and Technologies**

10     24.     One important element of Microsoft's anti-piracy technology is product

11  activation, which involves the activation of software through product activation keys.  A

12  Microsoft product activation key is a 25-character alphanumeric string generated by Microsoft

13  and provided to customers and OEMs.  When customers and OEMs install copies of certain

14  Microsoft software on a device, they are required to enter a product activation key.  As part of

15  the activation process, customers and, in some cases, OEMs, voluntarily contact Microsoft's

16  activation servers over the Internet and transmit their product keys and other technical

17  information about their device to the activation servers.

18     25.     The activation process is analogous to the activation of credit cards or mobile

19  phones with a code provided by the financial institution or the mobile carrier.  Because in certain

20  instances copies of Microsoft's copyrighted software are capable of being installed on an

21  unlimited number of computers, Microsoft relies on the product activation process to detect

22  unauthorized use and protect consumers from the risks of non-genuine software.

23     26.     Product activation keys are not a software license, nor do they constitute

24  authorization from Microsoft to access or use software without the appropriate license.  Product

25  activation is merely technology used by Microsoft to protect its intellectual property from

26  unauthorized use, counterfeiting, and other forms of abuse.  Microsoft does not sell or otherwise

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

provide product activation keys separately from licensed software, nor does it authorize others to do so.

27.     Some Microsoft programs issue tokens to customers that they use to download and activate copies of the software.  Like product activation keys, tokens are 25-character alphanumeric strings generated by Microsoft.  The associated product activation key does not need to be entered separately as it automatically activates the software when a token is used to download such copy.  Like product activation keys, these tokens do not constitute authorization from Microsoft to access or use software without the appropriate license.

28.     A prevalent facilitator of unauthorized software use is the unlawful distribution of Microsoft product activation keys that have been decoupled from the software they were authorized to activate.  Decoupled product activation keys are frequently "abused," meaning used to activate more copies of software than the license for the software they were intended to activate allows.

29.     Similarly, there is a market for the unauthorized distribution of tokens.  These tokens enable the holder of the token to download and activate unlicensed and pirated copies of software.

30.     Distributors of these keys commonly instruct their customers, as in this case, to download copies of the software from Microsoft or other unauthorized download sites and then use the decoupled keys to activate the software.  In these instances, the customers downloading copies of the software do not purchase the required software license, and Microsoft is not paid for the software being used.  The global black market for decoupled product activation keys generates millions of dollars of illicit revenues for distributors.

**D.     Defendants' Unlawful Advertising and Sale of Microsoft Software and Components**

31.     As described below, Microsoft's investigations have revealed that Defendants are engaged in the widespread marketing and sale of unauthorized access devices including decoupled product keys, OEM tokens, and unauthorized credentials.  Defendants advertise these

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   unauthorized access devices with download links to software which they instruct their customers

2   to use to obtain copies of the software.  These download links are either to Microsoft's genuine

3   download sites which their customers are not authorized to use because they do not have a

4   license for the software, or authorized sites containing counterfeit copies of software.  In either

5   instance, copying software from these sites constitutes the infringement of Microsoft's

6   copyright-protected software which Defendants induced, enabled, facilitated, and proximately

7   caused.

8                             **Test Purchases from SoftwareKeep Website**

9           32.     Between September 19, 2020, and January 19, 2022, Microsoft test-purchased the

10  below-described infringing Microsoft materials from the SoftwareKeep Website.  Microsoft's

11  trademarks were used, without authorization, on the SoftwareKeep Website and in Defendants'

12  sales materials to market and advertise the infringing Microsoft software products.  Defendants'

13  use of the Microsoft trademarks was intended to, and likely did, confuse customers about the

14  origin and authenticity of the software and their entitlement to use the software.

15          33.     **Test Purchases 1–3:**  On September 19, 2020, a Microsoft investigator purchased

16  (a) one copy of Office Professional Plus 2019 for $246.99; (b) one copy of Project 2019

17  Standard for $318.99; and (3) one copy of Windows 10 Professional for $119.99.  The results of

18  the test purchase are as follows:

19          a.      Defendants fulfilled the Office Professional Plus 2019 order by supplying

20  the investigator with one decoupled product key from the Microsoft Volume Licensing

21  Academic Program ("VLAP").  VLAP program keys are issued to a specific VLAP program

22  member and are only authorized for that member's use.  VLAP program keys may not be

23  redistributed.  Defendants also supplied the investigator with a link to a Microsoft download site

24  that neither Defendants nor their customers were authorized to use to download copies of

25  Microsoft Office software using the VLAP product key.

26          b.      Defendants fulfilled the Project 2019 Standard order by supplying the

27  investigator with one decoupled product key from the Microsoft Imagine program.  Imagine

COMPLAINT - 10
(2:22-cv-1113)

program keys are issued to a specific Imagine program member and are only authorized for that member's use.  Imagine program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Project software using the Imagine program product key.

c.       Defendants fulfilled the Windows 10 Professional order by supplying the investigator with one decoupled product key from the Microsoft DreamSpark program.  DreamSpark program keys are issued to a specific DreamSpark program member and are only authorized for that member's use.  DreamSpark program keys may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

34.       **Test Purchase 4**:  On November 15, 2020, a Microsoft investigator purchased one copy of Visio 2019 Standard for $178.99.  Defendants fulfilled the Visio 2019 Standard order by supplying the investigator with one decoupled product key from the Microsoft DreamSpark program.  DreamSpark program keys are issued to a specific DreamSpark program member and are only authorized for that member's use.  DreamSpark program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the DreamSpark program product key.

35.       **Test Purchases 5–8**:  On October 31, 2021, a Microsoft investigator purchased (a) one copy of Office Home & Student 2019 for $89.99; (b) one copy of Office Home & Business 2019 for $154.99; (c) one copy of Windows 11 Professional for $104.99; and (d) one USB Software Backup for $24.99.  The results of the test purchase are as follows:

a.       Defendants fulfilled the Office Home & Student 2019 order by supplying the investigator with one abused OEM token for the software and a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software with the OEM token.

COMPLAINT - 11
(2:22-cv-1113)

b.      Defendants fulfilled the Office Home & Business 2019 order by supplying the investigator with one abused retail key for the software and a link to a Microsoft software download website that neither Defendant nor their customers were authorized to use to download copies of Microsoft Office software with the retail key.

c.      Defendants fulfilled the Windows 11 Professional order by supplying the investigator with one decoupled product key from the Microsoft Developer Network ("MSDN") program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

d.      Defendants did not fulfill the purchase of the USB Software Backup. Instead, the investigator paid $24.99 to sales@softwarekeep.com, and the same amount was refunded by Defendant TSPE, using email address sales@softwarekeep.ca.

36.     **Test Purchases 9–11**:  On January 19, 2022, a Microsoft investigator purchased (a) one copy of Windows 11 Professional for $99.99; (b) one copy of Office Professional 2021 for $284.99; and (c) Visio 2019 Standard for $178.99.  The results of the test purchase are as follows:

a.      Defendants fulfilled the Windows 11 Professional order by supplying the investigator with one decoupled product key from the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use. MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

b.      Defendants fulfilled the Office Professional 2021 order by supplying the investigator with one token from the MSDN program.  MSDN program tokens are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program tokens may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  authorized to use to download copies of Microsoft Office software using the MSDN program

2  token.

3         c.      Defendants fulfilled the Visio 2019 Standard order by supplying the

4  investigator with one decoupled product key from the Microsoft Imagine program.  Imagine

5  program keys are issued to a specific Imagine program member and are only authorized for that

6  member's use.  Imagine program keys may not be redistributed.  Defendants also supplied the

7  investigator with a link to a Microsoft download site that neither Defendants nor their customers

8  were authorized to use to download copies of Microsoft Project software using the Imagine

9  program product key.

**Test Purchases from SoftwareKeep Canada Website**

10

11     37.     Between February 1, 2021, and November 3, 2021, Microsoft test purchased the

12  below-described infringing Microsoft materials from the SoftwareKeep Canada Website.

13  Microsoft's trademarks were used, without authorization, on the SoftwareKeep Canada Website

14  and in Defendants' sales materials to market and advertise the infringing Microsoft software

15  products.  Defendants' use of the Microsoft trademarks was intended to, and likely did, confuse

16  customers about the origin and authenticity of the software and their entitlement to use the

17  software.

18     38.     **Test Purchases 12–13**:  On February 1, 2021, a Microsoft investigator purchased

19  (a) one copy of Office Home & Business 2019 for $176.99; and (b) one copy of Windows 10

20  Professional for $349.99.  The results of the test purchase are as follows:

21         a.      Defendants fulfilled the Office Home & Business 2019 order by supplying

22  the investigator with one decoupled retail product key.  Defendants also supplied the investigator

23  with a link to a Microsoft software download site that neither Defendants nor their customers

24  were authorized to use to download copies of Microsoft Office software using the decoupled

25  retail key.

26         b.      Defendants fulfilled the Windows 10 Professional order by supplying the

27  investigator with one decoupled product key for Microsoft Windows software from the

COMPLAINT - 13
(2:22-cv-1113)

DreamSpark program.  These keys are only authorized for use by a member of the DreamSpark program and may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

39. **Test Purchases 14–16:**  On May 19, 2021, a Microsoft investigator purchased (a) one copy of Office Professional 2019 for $366.99; (b) one copy of Project 2019 Standard for $499.99; and (c) one copy of Visio 2019 Standard for $239.99.  The results of the test purchase are as follows:

a. Defendants fulfilled the Office Professional 2019 order by supplying the investigator with one decoupled product key for Microsoft Office software from the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the MSDN program product key.

b. Defendants fulfilled the Project 2019 Standard order by supplying the investigator with one retail token from the Electronic Software Delivery ("ESD") system.  These tokens are only authorized for use through the ESD system and may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Project software using the ESD token.

c. Defendants fulfilled the Visio 2019 Standard order by supplying the investigator with one retail token from the ESD system.  These tokens are only authorized for use through the ESD system and may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the ESD token.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

40.     **Test Purchases 17–18:**  On November 3, 2021, a Microsoft investigator purchased (a) one copy of Windows 10 Professional for $109.99; and (b) Office Home & Student 2021 for $154.99.  The results of the test purchase are as follows:

    a.      Defendants fulfilled the Windows 10 Professional order by supplying the investigator with one decoupled OA3.0 product key for Microsoft Windows software.  OA3.0 keys are only authorized for use by OEMs and may not be redistributed on a standalone basis.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

    b.      Defendants fulfilled the Office Home & Student 2021 order by supplying the investigator with one abused token for Microsoft Office software and a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the abused token for Microsoft Office.

### Test Purchases from SaveOnIt Website

41.     Between October 8, 2020, and November 1, 2021, Microsoft test-purchased the below-described infringing Microsoft materials from the SaveOnIt Website.  Microsoft's trademarks were used, without authorization, on the SaveOnIt Website and in Defendants' sales materials to market and advertise the infringing Microsoft software products.  Defendants' use of the Microsoft trademarks was intended to, and likely did, confuse customers about the origin and authenticity of the software and their entitlement to use the software.

42.     **Test Purchases 19–22:**  On October 8, 2020, a Microsoft investigator purchased (a) one copy of Project 2019 Standard for $318.99; (b) one copy of Visio 2019 Standard for $188.99; (c) one copy of Office Home & Business 2019 for $194.99; and (d) one copy of Windows 10 Professional for $129.99.  The results of the test purchase are as follows:

    a.      Defendants fulfilled the Project 2019 Standard order by supplying the investigator with one decoupled product key for Microsoft Project software from the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Project software using the MSDN program product key.

b.      Defendants fulfilled the Visio 2019 Standard order by supplying the investigator with one abused retail token for Microsoft Visio software and a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the abused token.

c.      Defendants fulfilled the Office Home & Business 2019 order by supplying the investigator with one decoupled product key associated with the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the MSDN program product key.

d.      Defendants fulfilled the Windows 10 Professional order by supplying the investigator with one decoupled product key associated with the DreamSpark program.  DreamSpark program keys are issued to a specific DreamSpark program member and are only authorized for that user's use.  DreamSpark program keys may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

43.     **Test Purchases 23–25:**  On November 25, 2020, a Microsoft investigator purchased (a) one copy of Office Home & Student 2019 for $104.99; (b) one copy of Visio 2019 Standard for $188.99; and (c) one copy of Windows 10 Home 32 Bit for $109.99.  The results of the test purchase are as follows:

a.      Defendants fulfilled the Office Home & Student 2019 order by supplying the investigator with decoupled OA3.0 token for software.  OA3.0 tokens are only authorized for use by a member of the OA3.0 system and may not be redistributed.  Defendants also supplied

COMPLAINT - 16
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the OA3.0 token.

b.      Defendants fulfilled the Visio 2019 Standard order by supplying the investigator with one abused retail token for Microsoft Visio software and a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the abused token.

c.      Defendants fulfilled the Windows 10 Home 32 Bit order by supplying the investigator with one OA3.0 decoupled product key for Windows 10 software.  OA3.0 keys are only authorized for use by OEMs and may not be redistributed on a standalone basis. Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

44.      **Test Purchases 26–27:**  On November 1, 2021, a Microsoft investigator purchased (a) one copy of Windows 11 Professional for $104.99; and (b) one copy of Office Home & Business 2021 for $184.99.  The results of the test purchase are as follows:

a.      Defendants fulfilled the Windows 11 Professional order by supplying the investigator with one decoupled product key for Microsoft Windows software and a link to an unauthorized download site containing counterfeit software.

b.      Defendants fulfilled the Office Home & Business 2021 order by supplying the investigator with one decoupled product key for Microsoft Office software and a link to an unauthorized download site containing counterfeit software.

### Test Purchases from Catsoft Website

45.      Between October 5, 2020, and January 9, 2022, Microsoft test purchased the below-described infringing Microsoft materials from the Catsoft Website.  Microsoft's trademarks were used, without authorization, on the Catsoft Website and in Defendants' sales materials to market and advertise the infringing Microsoft software products.  Defendants' use of

COMPLAINT - 17
(2:22-cv-1113)

the Microsoft trademarks was intended to, and likely did, confuse customers about the origin and authenticity of the software and their entitlement to use the software.

46.     **Test Purchases 28–30:**  On October 5, 2020, a Microsoft investigator purchased (a) one copy of Office Home & Business 2019 for $194.99; (b) one copy of Windows 10 Professional 64 Bit for $129.99; and (c) one copy of Visio 2019 Professional for $238.99.  The results of the test purchase are as follows:

a.     Defendants fulfilled the Office Home & Business 2019 order by supplying the investigator with one decoupled product key associated with the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the MSDN program product key.

b.     Defendants fulfilled the Windows 10 Professional 64 Bit order by supplying the investigator with one decoupled product key associated with the DreamSpark program.  These keys are only authorized for use by a member of the DreamSpark program and may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

c.     Defendants fulfilled the Visio 2019 Professional order by supplying the investigator with one decoupled product key from the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the MSDN program product key.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

47.     **Test Purchases 31–32:**  On November 13, 2020, a Microsoft investigator purchased (a) one copy of Office Home & Student 2019 for $104.99; and (b) one copy of Windows 10 Home for $104.99.  The results of the test purchase are as follows:

a.     Defendants fulfilled the Office Home & Student 2019 order by supplying the investigator with one OA3.0 token.  OA3.0 tokens are only authorized for use by OEMs and may not be redistributed on a standalone basis.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the OA3.0 token.

b.     Defendants fulfilled the Windows 10 Home order by supplying the investigator with one decoupled OA3.0 product key.  OA3.0 keys are only authorized for use by OEMs and may not be redistributed on a standalone basis.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

48.     **Test Purchases 33–34:**  On January 9, 2022, a Microsoft investigator purchased (a) one copy of Office Home & Student 2021 for $119.99; and (b) one copy of Windows 11 for $99.99.  The results of the test purchase are as follows:

a.     Defendants fulfilled the Office Home & Student 2021 order by supplying the investigator with one token from the MSDN program.  These tokens are only authorized for use by a member of the MSDN program and may not be redistributed.  Defendants also supplied the investigator with a link to a Microsoft software download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software using the MSDN token for Microsoft Office distributed by Defendants.

b.     Defendants fulfilled the Windows 11 order by supplying the investigator with one decoupled product key associated with the MSDN program.  MSDN program keys are issued to a specific MSDN program member and are only authorized for that member's use.  MSDN program keys may not be redistributed.  Defendants also supplied the investigator with a link to an unauthorized download site containing counterfeit software.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Contributory Copyright Infringement**
**17 U.S.C. § 501**

49.     Microsoft re-alleges the preceding paragraphs as though fully set forth in this Cause of Action.

50.     Microsoft is the sole owner of the software programs listed above and of the corresponding copyrights and Certificates of Registration with the registration numbers.

51.     Defendants' customers unwittingly have infringed and continue to infringe Microsoft's copyright-protected software by using unauthorized access devices to download, copy, and activate Microsoft software.

52.     Defendants and the Doe Defendants materially contributed to their customers' infringement by knowingly and intentionally sourcing and reselling decoupled product keys to be used by their customers to facilitate the downloading, copying, and activation of Microsoft's copyright-protected software from unauthorized and counterfeit download sites.

53.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's intellectual property rights.

54.     On information and belief, Defendants have committed, and continue to commit, acts contributing to the infringement of the Microsoft copyrights described above.

55.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement.  Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

56.     The Court should enhance an award of statutory damages in accordance with 17 U.S.C. § 504(c)(2).

57.     Microsoft is further entitled to injunctive relief and to an order impounding all unlawfully obtained product-activation keys.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things (a) Microsoft's copyright is unique and valuable property that has no readily determinable market value; (b) Defendants'

COMPLAINT - 20
(2:22-cv-1113)

1    infringement harms Microsoft such that Microsoft could not be made whole by any monetary

2    award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is

3    continuing.

4                        **SECOND CAUSE OF ACTION**

5                          **Trademark Infringement**
                               **15 U.S.C. § 1114**

6         58.     Microsoft re-alleges the preceding paragraphs as though fully set forth in this

7    Cause of Action.

8         59.     Defendants' activities constitute infringement of Microsoft's federally registered

9    trademarks with the registration numbers listed above.  Microsoft advertises, markets,

10   distributes, and licenses its software and related components under the trademarks described

11   above and uses these trademarks to distinguish Microsoft's software and related components

12   from the software or products of others in the same or related fields.

13        60.     Because of Microsoft's long, continuous, and exclusive use of these trademarks,

14   they have come to mean—and are understood by customers, end users, and the public to

15   signify—software programs and related components or services of Microsoft.

16        61.     Defendants have been, and continue to be, involved in using Microsoft's

17   registered trademarks in advertising, marketing, and offering Microsoft product keys to be used

18   by customers without Microsoft's authority to activate counterfeit and unlicensed software.

19   Defendants are not licensed to use these registered trademarks.

20        62.     Defendants' use of the trademarks in advertising, marketing, and offering

21   software and product keys is likely to cause confusion, mistake, or deception as to the product

22   keys' source, origin, or authenticity and the source, origin, or authenticity of the counterfeit and

23   unlicensed software that Defendants induce and facilitate their customers to download and

24   activate.

25        63.     Further, Defendants' activities are likely to lead others to conclude, incorrectly,

26   that the infringing materials that Defendants are advertising, marketing, installing, offering, and

27

COMPLAINT - 21
(2:22-cv-1113)

distributing originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

64.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

65.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages trebled, the Defendants' profits attributable to the infringement, and attorney fees under 15 U.S.C. § 1117(a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

66.     Microsoft is further entitled to injunctive relief and to an order compelling the impoundment of all infringing and unauthorized materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's trademarks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

### THIRD CAUSE OF ACTION
**False Designation of Origin; False and Misleading**
**Representations and Descriptions of Fact**
**15 U.S.C. § 1125**

67.     Microsoft re-alleges the preceding paragraphs as though fully set forth in this Cause of Action.

68.     Defendants have made false and misleading representations and descriptions of fact in connection with the offering for sale and sale of access devices to Microsoft software.

69.     Defendants' false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with the offer for sale and sale of counterfeit and unlicensed Microsoft software.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

70.     Defendants' false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, or origin of the Microsoft software they advertise and distribute.

71.     Defendants' use of Microsoft's name and trademarks and its false and misleading representations and descriptions of fact in interstate commerce in connection with its offer for sale of counterfeit and unlicensed Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers. This deception is material because it is likely to influence consumers' purchasing decisions.

72.     Defendants have used, and continue to use, Microsoft's name and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

73.     Defendants' conduct constitutes false designation of origin and descriptions, in violation of 15 U.S.C. § 1125(a).

74.     Defendants' wrongful conduct is likely to continue unless the Court restrains and enjoins it.

75.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees according to 15 U.S.C. § 1117.

76.     Microsoft is also entitled to injunctive relief and to an order directing Defendants to stop marketing and advertising that they are providing legally licensed Microsoft software. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

COMPLAINT - 23
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

## FOURTH CAUSE OF ACTION
### Trade Dress Infringement
### 15 U.S.C. § 1125

3

4

77.     Microsoft re-alleges the preceding paragraphs as though fully set forth in this Cause of Action.

5

6

7

78.     Microsoft's trade dress—specifically, the design for its software—is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning in the marketplace.

8

9

10

11

79.     Microsoft's trade dress has acquired secondary meaning in the marketplace as a result of Microsoft's extensive advertising, Microsoft's sales success, and the length and exclusivity with which Microsoft has used its product packaging and design, among other factors.

12

13

80.     Defendants are unfairly competing with Microsoft by adopting and advertising infringing trade dress to identify their goods and services.

14

15

16

17

81.     The intent and result of Defendants' actions are to create the impression and perception that Defendants' goods and services emanate from or are endorsed by Microsoft, causing confusion, mistake, and deception among the public as to the source and origin of those goods and services.

18

19

20

82.     Defendants' actions are intended to cause, have caused, and are likely to cause confusion, mistake, deception among consumers, the public, and the trade who recognize and associate Microsoft trade dress with Microsoft.

21

22

23

24

83.     Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the infringing products, or as to a possible affiliation, connection, or association between Microsoft, Defendants, and the infringing products.

25

26

84.     Defendants' use of an infringing trade dress has caused, and unless restrained, will continue to cause injury to Microsoft.

27

COMPLAINT - 24
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

85.    By using the same or a confusingly similar trade dress, Defendants have misrepresented the nature, origin, characteristics, and quality of their products, in violation of the Lanham Act (15 U.S.C. § 1125(a)).

86.    By reason of Defendants' actions, Microsoft has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and thus, Microsoft is entitled to injunctive relief.

87.    As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages trebled, Defendants' profits, and attorney fees pursuant to 15 U.S.C. § 1117.

## VI.    PRAYER FOR RELIEF

Microsoft respectfully requests that the Court grant Microsoft the following relief:

a.    Judgment in Microsoft's favor on all claims;

b.    An order restraining and enjoining Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with them from further violating Microsoft's rights with the form and scope of an injunction to be determined according to proof at trial;

c.    An order under 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit or infringing copies of purported Microsoft software or any access devices thereto and any related items, including business records, that are in Defendants' possession or under their control;

d.    An order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their distribution of counterfeit and unlicensed copies of Microsoft's software and requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

e.    An order requiring that Defendants pay all general, special, actual, and statutory damages that Microsoft sustained, or will sustain, as a consequence of

COMPLAINT - 25
(2:22-cv-1113)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

their unlawful acts, and that such damages be enhanced, doubled, or trebled as provided by 17 U.S.C. § 504(c) and 15 U.S.C. § 1117(b);

f.    An order requiring Defendants to pay to Microsoft the costs of this action and the reasonable attorneys' fees incurred in prosecuting it, as provided by 15 U.S.C. § 1117 and 17 U.S.C. § 505; and

g.    An order granting all other relief as the Court deems just and equitable.


DATED:  August 9, 2022

Davis Wright Tremaine LLP
Attorneys for MICROSOFT CORPORATION


By */s/ Bonnie E. MacNaughton*
Bonnie E. MacNaughton
WSBA #36110
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone:  (206) 622-3150
Fax:  (206) 757-7700
Email:  bonniemacnaughton@dwt.com

John D. Freed (*pro hac vice application to be filed*)
Megan C. Amaris (*pro hac vice application to be filed*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599
Email:  jakefreed@dwt.com
Email:  meganamaris@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax