UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington Corporation,<br><br>Plaintiff,<br>v.<br><br>THE SEARCH PEOPLE ENTERPRISES LTD., a British Columbia, Canada, corporation; MEHTABJIT SINGH TEJA, a/k/a RONNIE TEJA, an individual; and DOES 1-10,<br><br>Defendants. | CASE NO. 2:22-cv-01113-TL<br><br>ORDER ON MOTION FOR PROTECTIVE ORDER |

    This lawsuit concerns the distribution of Plaintiff Microsoft Corporation's product activation keys and tokens by The Search People Enterprises Ltd. ("TSPE") and its owner, Mehtabjit Singh Teja (a/k/a Ronnie Teja). This matter is before the Court on Plaintiff's Motion for Protective Order Under Rule 26(c)(1). Dkt. No. 74. Having reviewed Defendants' response (Dkt. No. 81), Plaintiff's reply (Dkt. No. 82), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

# I. LEGAL STANDARD

A district court has wide discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including if a Rule 30(b)(6) subpoena or notice is improper. Fed. R. Civ. P. 26(c)(1); *see also Saevik v. Swedish Med. Ctr.*, No. C19-1992, 2021 WL 2411612, at *1 (W.D. Wash. June 14, 2021). Good cause exists when the discovery sought is irrelevant. *Advanced Hair Restoration LLC v. Bosley Inc.*, No. C23-1031, 2024 WL 3833493, at *2 (W.D. Wash. Aug. 15, 2024). *See also Allied World Nat'l Assurance Co. v. Foremost Ins. Co.*, No. C20-154, 2021 WL 796331, at *2 (W.D. Wash. Mar. 2, 2021) (granting in part a motion for protective order "given the fact that the materials sought are not relevant and therefore their production would be an unnecessary burden and expense in this case").

As with its discretion for controlling discovery in general, a district court also has broad discretion in determining relevancy for discovery purposes. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). However, even if relevant, a Rule 30(b)(6) notice "may only ask about topics that are proportional to the needs of the case and that describe the topics for examination with a reasonable degree of particularity." *Simkins by Simkins v. N.Y. Life Ins. Co.*, No. C23-578, 2023 WL 6541460, at *1 (W.D. Wash. Oct. 6, 2023).

# II. DISCUSSION

Discovery in this case closed on February 3, 2025. Dkt. No. 43. Defendants served a notice of a Rule 30(b)(6) deposition on Plaintiff on February 6, 2024 (Dkt. No. 75-1), and Plaintiff served its objections to the notice on March 7, 2024 (Dkt. No. 75-2). Defendants then seemingly did not follow up in earnest on their deposition notice until January 8, 2025, just 26 days before the close of discovery, when they issued an amended notice of Rule 30(b)(6)

deposition that included 11 new topics.[1] Dkt. No. 75-3. After unsuccessfully meeting and conferring on Defendants' amended notice, Plaintiff filed a motion for protective order on January 16, 2025. Dkt. No. 74 at 15.

To justify the additional topics in the amended notice, Defendants rely on their Nineteenth Affirmative Defense that "Microsoft's claims are barred, in whole or in part, because any alleged acts were authorized and/or ratified by Microsoft." Dkt. No. 81 at 12. Specifically, Defendants assert that this defense covers their theory that Defendants' customers (versus Defendants themselves) had implied licenses from Plaintiff.[2] *Id.*

Plaintiff asserts that Defendants never pled this affirmative defense with respect to the customers. Dkt. No. 82 at 3. Plaintiff argues that Defendants' Seventh Affirmative Defense specifically alleged that "Defendant has an implied license to use the copyrights . . . owned by Microsoft [Dkt. No. 18 at 10]," a defense Defendants withdrew (Dkt. No. 75-9 at 38) with no corresponding implied-customer-license affirmative defense and only a "vague 'authorization' defense." Dkt. No. 82 at 3. Plaintiff cites *Best Western International, Inc. v. Royal Albert's Palace, Inc.*, No. C09–1806, 2011 WL 285818, at *3 (D. Ariz. Jan. 27, 2011), in support of its position that the implied-customer-license defense was waived. Dkt. No. 82 at 3. However, in *Best Western*, the court found that the defendant had pled with some degree of specificity three affirmative defenses related to a discharge theory but had forfeited a fourth theory of release because it was based on different circumstances than those raised in the defendant's answer.

---

[1] On January 24, 2025, the Court granted the Parties' stipulation to allow Defendants to depose Plaintiff after the February 3, 2025, discovery cutoff deadline but before the end of February 2025. Dkt. No. 80.

[2] Defendants also assert that they reserved any additional defenses under Federal Rule of Civil Procedure 8(c). Dkt. No. 81 at 12; Dkt. No. 18 at 12 (reservation of affirmative defenses). But merely reserving a potential affirmative defense means nothing. While a district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion, *see Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010), doing so in a response to a motion for protective order six days before the close of discovery would be too prejudicial to allow.

2011 WL 285818, at *3. To the contrary here, while perhaps unartfully worded, Defendants' Nineteenth Affirmative Defense can be read to incorporate an implied-customer-license defense. If a customer had an implied license, then Plaintiff would have authorized the customer's use of its program—which, in turn, would be relevant to whether Defendants contributed to any infringement of Plaintiff's copyright by the customer.

Defendants' Nineteenth Affirmative Defense *could* be read to incorporate an implied defense, and the Parties agree that an "implied license" is an affirmative defense to copyright infringement. Dkt. No. 81 at 7–8; Dkt. No. 82 at 2. However, the question here is whether Defendants' implied *customer* license defense is an actual defense. The Court believes this remains an open question, for the reasons stated below.

The Ninth Circuit has long found "implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'" *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)); *see also Corbello v. DeVito*, 777 F.3d 1058, 1067 (9th Cir. 2015) ("[A]n implied license is granted when '(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.'" (quoting *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008))). Given that Plaintiff had no direct relationship with Defendants' customers, it cannot be argued that Plaintiff made its particular works to deliver them to Defendant's customers.

However, while most implied-license cases meet the three-factor *Gagnon* test, in evaluating an implied license, courts also consider whether the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work. "Where the

totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license." *Interscope Recs. v. Time Warner, Inc.*, No. C10-1662, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010) (quoting Melville B. Nimmer & David B. Nimmer, Nimmer on Copyright § 10.03[A][7] (revised ed. 2009)); *see also Griego* v. *Jackson Jr.*, No. C24-3260, 2025 WL 297150, at *3 (C.D. Cal. Jan. 24, 2025); *Roblox Corp. v. WowWee Grp. Ltd.*, No. C22-4476, 2024 WL 4057403, at *5 (N.D. Cal. Sept. 3, 2024); *Khachatryan v. 1 Hotel W. Hollywood L.L.C.*, No. C23-10829, 2024 WL 3015504, at *4 (C.D. Cal. June 14, 2024).

Plaintiff concedes that district courts have found an implied license without meeting the strict standards for implied licensing. Dkt. No. 82 at 4. Plaintiff asserts that it did not know of the specific uses of its product by Defendants' customers until discovery in this lawsuit. *Id.* But Plaintiff knew of Defendants' practices enough to conduct the test buys of the product keys offered by Defendants in order to file its complaint. *See* Dkt. No. 1 ¶¶ 31–48. Plaintiff also asserts that it did not encourage the infringement. *Id.* It may well be true that Plaintiff neither knew of the specific uses by Defendants' customers nor encouraged the infringement. But Defendants must be able to test Plaintiff's assertions, and they need not rely on the representations of Plaintiff's counsel.

In light of the prior discussion, the Court finds that some of the new topics requested by Defendants do cover relevant areas for discovery. However, the Court also finds a number of the requests to be overbroad, and some requests to be irrelevant to Defendants' theory regarding an implied license for their customers. Accordingly, the Court rules on the Disputed Topics discussed in Plaintiff's motion as follows:

> **Topic 1.** The Subject Software that Microsoft allows to be downloaded from website(s) controlled by Microsoft without first redeeming a Product Key, and Microsoft's decision and reasoning to make such software available for download from website(s) controlled by Microsoft without first redeeming a Product Key.

ORDER ON MOTION FOR PROTECTIVE ORDER - 5

> **Ruling**: This topic is overbroad and irrelevant to Defendants' implied-customer-license theory. Therefore, this topic is STRICKEN from Defendants' notice.

**Topic 2.** The Subject Software for which Microsoft requires redemption of a Product Key prior to allowing it to be downloaded from website(s) controlled by Microsoft, and Microsoft's decision and reasoning to make such software available for download from website(s) controlled by Microsoft by requiring redemption of a Product Key first.

> **Ruling**: This topic is overbroad and irrelevant to Defendants' implied-customer-license theory. Therefore, this topic is STRICKEN from Defendants' notice.

**Topic 3.** Microsoft's technical ability, and decision(s) whether, to deny activation of the Subject Software through the use of Product Keys Microsoft contends are "unauthorized."

> **Ruling:** This topic is relevant to Defendants' implied-customer-license theory and will be allowed.

**Topic 4.** Microsoft's technical ability, and decision(s) whether, to deactivate the Subject Software through the use of Product Keys Microsoft contends are "unauthorized."

> **Ruling:** This topic is relevant to Defendants' implied-customer-license theory and will be allowed.

**Topic 5.** Actions, if any, taken by Microsoft to address any breaches of agreements between Microsoft and the parties to whom Microsoft supplied Product Keys that were ultimately purchased and sold by Defendants.

> **Ruling**: This topic is overbroad and irrelevant to Defendants' implied-customer-license theory. *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007). Therefore, this topic is STRICKEN from Defendants' notice.

**Topic 6**. Microsoft's issuance of, and technical ability to determine the origin and monitor the use, transfer, and/or activation or non-activation of, the following Product Key types: (a) Dreamspark (Academic); (b) Volume Licensing Academic Program ("VLAP"); (c) Microsoft Developer Network ("MSDN") and Visual Studio Subscription ("VSS"); (d) Open Volume License ("VL");

ORDER ON MOTION FOR PROTECTIVE ORDER - 6

(e) Select Plus; (f) Microsoft Partner Network ("MPN"); (g) Microsoft Action Pack Subscription ("MAPS"); and (h) Original Equipment Manufacturers ("OEMs").

> **Ruling:** This topic is relevant to Defendants' implied-customer-license theory and will be allowed.

**Topic 7.** Microsoft's issuance of, and technical ability to determine the origin and monitor the use, transfer, and/or activation or non-activation of, the following Product Key types: (a) PKRFT; (b) Retail ESD Tokens; and (c) Retail component distribution.

> **Ruling**: This topic is irrelevant, as Plaintiff declined to pursue its contributory copyright infringement claim for these programs. Dkt. No. 58 at 20. Therefore, this topic is STRICKEN from Defendants' notice.

**Topic 8.** Microsoft's communications with users of the Subject Software that was activated through the purchase of Product Keys from Defendants.

> **Ruling:** This topic seems better suited for written discovery; still, the topic is relevant to Defendants' implied-customer-license theory and will be allowed.

**Topic 9.** Microsoft's profits resulting from transactions made by Defendants' customers after Defendants' customers activated the Subject Software using Product Keys from Defendants.

> **Ruling:** This topic seems better suited for written discovery; still, the topic is relevant to Defendants' implied-customer-license theory and will be allowed.

**Topic 10.** The ability to purchase, and decisions whether to offer the purchase of, Subject Software from Microsoft on a physical medium (including CDs/DVDs).

> **Ruling**: This topic is irrelevant to Defendants' implied-customer-license theory. Therefore, this topic is STRICKEN from Defendants' notice.

**Topic 22.** Your communications with any third party relating to your claims against Defendants.

> **Ruling**: Defendants clarify that this request concerns communications Plaintiff's attorneys had with a former contractor associated with Defendants. Dkt. No. 81 at 12.

>Plaintiff did not object to this topic on relevance grounds but, rather, asserted that the information is protected from disclosure by certain privileges, the only applicable one being the attorney work-product doctrine. Dkt. No. 75-7 at 16. Plaintiff produced the communications it had with the former contractor. Dkt. No. 75-8 at 4. As Defendants already have the content of the communications, any additional information outside the content of the communications themselves would invade the attorney work-product doctrine. Therefore, this topic is STRICKEN from Defendants' notice.

As to Topics 11–22, Plaintiff objected to the topics (*see* Dkt. No. 75-7) but did not seek a protective order for these topics in its motion. Topics 18–20 were Topics 12–14 in Defendants' original Rule 30(b)(6) notice. *Compare* Dkt. No. 75-2 at 10–11, *with* Dkt. No. 75-7 at 14–15. Plaintiff informed Defendants on March 7, 2024, that they would not produce a witness to testify as to these topics. Dkt. No. 75-2 at 10–11. While Plaintiff did not include these topics in their motion, Defendants were aware of Plaintiff's position for many months and neither raised issues with these particulars objections nor moved to compel testimony on these topics. Dkt. No. 82 at 6. Therefore, the Rule 30(b)(6) deposition on these topics SHALL proceed subject to the objections raised by Plaintiff, except that Plaintiff will not have to prepare a witness to testify as to Topics 18–20 in the amended notice.

While the Court is allowing some of Defendants' new topics, the Court is troubled that Defendants waited until nearly the end of discovery to issue an amended Rule 30(b)(6) notice that adds such a significant number of topics. The Court reminds Defendants that a Rule 30(b)(6) deposition is not in lieu of what a party should have requested in written discovery. *See Willy v. Sherwin-Williams Co.*, No. C21-54, 2022 WL 1553703, at *5–6 (D. Or. May 17, 2022) ("Although a party may ask to depose a corporate designee regarding documents it has received in discovery, a Rule 30(b)(6) deposition should not function as a substitute for undertaking discovery in the first instance."). The Court further notes that Defendants' deposition notice

stating that the deposition "will continue day to day, weekends and holidays excepted, until completed or adjourned by the attorney(s) taking the deposition" (Dkt. No. 75-1 at 2) is woefully out of date, as the duration of any deposition pursuant to Federal Rule of Civil Procedure 30(d)(1) was changed in the 2000 amendments to the Rules to be presumptively one day of seven hours. As there was no motion by Defendants for a longer time period for the Rule 30(b)(6) deposition, it will be limited to one day of seven hours.

In addition, the Court is skeptical that Defendants can realistically or usefully cover such a large number of topics in a seven-hour deposition. Therefore, the Court ORDERS Defendants to review their list of topics and provide Microsoft notice of the actual topics that will be covered at the Rule 30(b)(6) deposition **within five (5) days** of this Order.

Finally, as the Court finds both Defendants' opposition and Plaintiff's motion substantially justified, it will not award sanctions to either Party. However, should Defendants require Plaintiff to prepare a Rule 30(b)(6) designee for topics it does not cover at the deposition, the Court may entertain a motion for the costs of preparation for any topics not addressed.

### III.  CONCLUSION

Accordingly, Plaintiff's Motion for Protective Order Under Rule 26(c)(1) (Dkt. No. 74) is GRANTED IN PART and DENIED IN PART. Defendants may depose Plaintiff's Rule 30(b)(6) designee in a manner consistent with this Order.

Dated this 4th day of February 2025.

Tana Lin
United States District Judge