1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a
Washington Corporation,

                    Plaintiff,

     v.

THE SEARCH PEOPLE ENTERPRISES
LTD., a British Columbia, Canada,
corporation; MEHTABJIT SINGH TEJA,
a/k/a RONNIE TEJA, an individual; and
DOES 1-10,

                  Defendants.

CASE NO. 2:22-cv-01113-TL

ORDER ON DEFENDANTS'
MOTION AND RULE 56(D)
REQUEST

     This matter is before the Court on Defendants' motion at Docket No. 107, which asks the

Court to (1) permit the testimony of late-disclosed expert Houman Homayoun and (2) allow

additional briefing on Plaintiff's motion for summary judgment, and on Defendants' 56(d)

request (Dkt. No. 101 at 11). Having reviewed the motion, Plaintiff's response (Dkt. No. 110),

Defendants' reply (Dkt. No. 112), the summary judgment briefing (Dkts. No. 86, 101, 105), and

the record in this case, and finding oral argument unnecessary, Local Civil Rule 7(b)(4), the

Court DENIES the motion and 56(d) request.

## I.    BACKGROUND

In 2022, Plaintiff Microsoft brought this case against The Search People Enterprises LTD

and Mehtabjit Singh Teja, aka Ronnie Teja ("Defendants"), alleging contributory copyright

infringement, trademark infringement, and violations of the Lanham Act. *See* Dkt. No. 1

(Complaint). A bench trial was originally set for June 24, 2024, and the Court issued an order

outlining the relevant pretrial deadlines. Dkt. No. 19. Discovery began, and various deadlines

passed—among these, the December 4, 2023, deadline for disclosure of expert testimony. *Id.*

at 2. To the Court's knowledge, neither party engaged or disclosed any expert by this date.

On December 20, 2024, Plaintiff filed an unopposed motion to extend certain deadlines

in the case. Dkt. No. 25. The deadlines the parties had "agreed to move" did not include the

expert disclosure deadline, which had already passed, or any other deadline that had passed or

would pass within a month of the filing of the motion. *See id.* The Court issued a new scheduling

order, resetting, in pertinent part, the close of discovery (to April 23, 2025), the deadline for

motions challenging expert testimony (to May 22, 2024), and the date for trial (to October 15,

2024). Dkt. No. 26. On April 10, 2024, in the wake of a change of counsel for Defendants, the

Parties jointly moved to extend the remaining pretrial deadlines once more. Dkt. No. 42. The

Parties did not ask the Court to revive the deadline for disclosing expert witnesses. *See id.* The

Court issued another amended scheduling order, again resetting the close of discovery (to

February 3, 2025), the deadline for motions challenging expert witness testimony (to April 3,

2025), and the date for trial (to August 4, 2025). Dkt. No. 43. This scheduling order did not

revive the expired deadline for the disclosure of expert witnesses. *See id.* The order setting the

original case schedule and each order revising the case schedule state, "the dates set forth in this

order are firm dates that can be changed only by order of the Court . . . . Failure to complete discovery within the time allowed is not recognized as good cause." Dkt. No. 19 at 2; Dkt No. 26 at 2; Dkt. No. 43 at 2.

On January 8, 2025, less than a month before the end of discovery, Defendants served Plaintiff with an amended notice of Rule 30(b)(6) deposition of Microsoft. Dkt. No. 74 (Plaintiff's motion for protective order) at 6. Plaintiff moved for a protective order, objecting that the amended notice came ten months after Microsoft served its objection to the original notice, and included "nearly a dozen new topics" on which a deponent must prepare. *Id.* The Court, though "troubled that Defendants waited until nearly the end of discovery to issue an amended Rule 30(b)(6) notice that adds such a significant number of topics," and finding that several of the topics were better suited to written discovery, allowed a deposition including most of the topics to go forward. Dkt. No. 83 at 7–9. The Court found that the remaining topics were related to Defendants' "implied customer license" defense, and that it was still an open question "whether Defendants' implied *customer* license defense is an actual defense." *Id.* at 4, 6–7.

On April 2, 2025, Plaintiff moved for summary judgment. Dkt. No. 86. Two weeks later, and one week before Defendants' response was due, the parties filed cross-requests for affirmative relief, using the Expedited Joint Motion Procedure. *See* Dkt. No. 93 ("Expedited Joint Motion"). Both parties sought relief arising from disputes related to the 30(b)(6) deposition, which had taken place on February 28, 2025, after the official close of discovery. *Id.* at 2–3. Defendants' request alleged, in part, that Laura Coulter, Plaintiff's 30(b)(6) witness, was insufficiently prepared on several of the noticed topics. *See generally id.* at 3–15 (Defendants' request for affirmative relief). Defendants asked the Court to grant them an additional two-hour 30(b)(6) deposition on two topics related to Microsoft's "technical ability to block or deny activation of product keys that are not authorized." *Id.* at 8, 15. Defendants did not indicate in

1    this motion that the additional deposition was necessary to its summary judgment response, nor

2    did they suggest that any other additional discovery might be required either for summary

3    judgment briefing or for trial preparation. *See generally id.*

4        One week later, on April 23, 2025, Defendants filed their response opposing summary

5    judgment. Dkt. No. 101. In their response, Defendants requested under Federal Rule of Civil

6    Procedure (FRCP) 56(d) that the Court "continue its ruling on the MSJ until after the Expedited

7    Joint Motion is decided upon, and once the relief granted to Defendants has been afforded (along

8    with any additional supplemental briefing on this MSJ that may be required)." *Id.* at 11.

9    Defendants did not mention the need for expert testimony or any additional discovery beyond

10   what it had previously requested. *See generally id.*

11       Sometime after filing their response to summary judgment, Defendants engaged an expert

12   witness, Dr. Houman Homayoun. Dkt. No. 107 at 7.

13       On the morning of April 30, the deadline for Plaintiff to file its reply in support of

14   summary judgment, Defendants' counsel emailed Plaintiff's counsel, asking "Can we kick out

15   the expert disclosure deadline one week, from 5/6 to 5/13? Another week would be appreciated."

16   Dkt. No 111 at 11 (April 30, 2025, email from Collin D. Greene to Xiang Li). On May 7, 2025,

17   Defendants produced Dr. Homayoun's expert report. Dkt. No. 107 at 5 n.1. On May 12, 2025,

18   Defendants filed the instant motion.

19       On May 20, 2025, the Court ruled on the Expedited Joint Motion, finding sufficient cause

20   to order that Plaintiff provide a well-prepared 30(b)(6) deponent for a supplemental two-hour

21   deposition, on two limited topics regarding "Microsoft's technical ability" to deny activation, or

22   to deactivate, the software that is the subject of this case. Dkt No. 109 at 4–5.

23   //

24   //

## II.    DISCUSSION

### A.    Whether Defendants May Offer an Expert Witness Disclosed on May 7, 2025

The Court first addresses Defendants' request that the Court "permit the expert testimony of Houman Homayoun for all purposes." Dkt. No. 107 at 1. This portion of Defendants' motion, which does not address Dr. Homayoun's qualifications, is more accurately described as a request to find that the expert disclosure deadline is May 6, 2025, or, in the alternative, that the untimeliness of the disclosure of Dr. Homayoun's report is excusable under FRCP 37(c)(1).

### 1.    The Deadline for Expert Disclosures

District courts have the "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). Federal Rule of Civil Procedure 26(a)(2)(D) recognizes this authority when it comes to the disclosure of expert witnesses, instructing that parties "must make these disclosures at the times and in the sequence that the court orders." Only "[a]bsent a stipulation or a court order" does the Rule provide a default deadline of "at least 90 days before the date set for trial or for the case to be ready for trial[.]" FRCP 20(a)(2)(D)(i).

Here, the Court set a sequence and a deadline for expert disclosures in its initial case scheduling order; this deadline passed on December 4, 2023. Dkt. No. 19. The parties did not ask for it to be revived at any point, including when the parties *jointly* requested an extension of specific other pretrial deadlines. *See* Dkt. No. 42. Defendants argue that, since the order resetting pretrial deadlines did not explicitly revive and reset the lapsed deadline for expert disclosures, it must have *implicitly* reset them to the default deadline provided by FRCP 26(a)(2)(D)(i), that is, 90 days before trial, or May 6, 2025. *See* Dkt. No. 107 at 11. In support of their position, Defendants point to standard language in the amended scheduling order that "[a]ll other dates are

1    specified in the Local Civil Rules," and, as the Local Civil Rules are silent on expert disclosure

2    deadlines, leap from there to the Federal Rules. *See id.* (quoting Dkt. Nos. 26, 43).

3        Defendants opine that "it would have made no sense to extend the trial and fact discovery

4    deadline without extending the expert disclosure deadline." Dkt. No. 112 at 2. First, the Court is

5    empowered to set these deadlines, and Rule 26(a)(2)(D) requires that "[a] party must make these

6    disclosures at the times and in the sequence that the court orders." Here, there was a court order

7    setting the expert disclosure deadline for December 4, 2023. Dkt. No. 19 at 2. Because the expert

8    disclosure deadline had been set by Court order, the default deadline of 90 days before the date

9    set for trial does not apply. FRCP 26(a)(2)(D)(i) ("*Absent a stipulation or a court order*, [expert]

10    disclosures must be made at least 90 days before the date set for trial or for the case to be ready

11    for trial." (emphasis added)).

12        Second, on the two occasions that revisions to the case schedule were requested, the

13    parties—once with the consent of Defendants, and once through a request including

14    Defendants—asked the Court only to reset certain deadlines that did *not* include the deadlines for

15    either expert witness disclosure or rebuttal expert witness disclosure. *See* Dkt. Nos. 25, 42. As a

16    result, resetting the requested deadlines *without* reviving these expert-related deadlines is quite

17    plainly what the Court did. *See* Dkt. Nos. 26, 43. Further, the fact that both requests included a

18    proposed adjustment related to experts—that is, an extension for the deadline for motions

19    challenging expert witness testimony—clearly showed the parties had considered deadlines

20    relating to experts. *See* Dkt Nos. 25, 42.

21        As Plaintiff pointed out to Defendants prior to the filing of this motion and again in its

22    response (and as Defendants failed to rebut), courts have consistently held that when an expert

23    disclosure deadline has already lapsed, subsequent continuances have no effect on reviving the

24    lapsed deadline. Dkt. No. 8-3 at 7 (May 7, 2025 email from Xiang Li to Collin Greene) (citing

*Indiana Ins. Co. v. Carl E. Most & Son, Inc.*, No. C22-1822, 2025 WL 276463, at *6 (S.D. Ind. Jan. 23, 2025)); *Sinegal v. PNK (Lake Charles) LLC*, No. C18-1157, 2024 WL 1159305, at *3 (W.D. La. Mar. 18, 2024); *DeBose v. Univ. of S. Fla. Bd. of Trs.*, No. C15-2787, 2018 WL 8919980, at *1 (M.D. Fla. Aug. 31, 2018); *see also, e.g.*, *Conner v. Associated Radiologists, Inc.*, No. C19-329, 2021 WL 1792531, at *1 (S.D.W. Va. May 5, 2021) ("Because the initial deadline for expert witness disclosure deadline had already passed, this amended [scheduling] order did not affect the initial disclosure date[.]") Courts in this district have shared this understanding. *See, e.g.*, *PUMA SE v. Brooks Sports, Inc.*, No. C23-116, 2024 WL 2091382, at *1 n.1, *3 (W.D. Wash. May 9, 2024) (noting that an intervening scheduling order[1] "did not change the expert disclosure deadlines" that had already lapsed before the revision, though FRCP 26(a)(2)(D)(ii) supplied a rebuttal deadline not mentioned in either order); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861, 2013 WL 6729471, at *1 (W.D. Wash. Dec. 20, 2013) (Where expert report "deadline had already lapsed when the Court's December 5, 2013 Scheduling Order[2] was entered," court found good cause to "extend" deadline to January 24, 2014—something that would have been both unnecessary and impossible if FRCP deadline governed.). This was abundantly clear here, as the Court cautioned in each scheduling order that "[t]he dates set forth in this order are firm dates that can be changed only by order of the Court . . . Failure to complete discovery within the time allowed is not recognized as good cause." Dkt. No. 19 at 2; Dkt No. 26 at 2; Dkt. No. 43 at 2.

---

[1] As here, the amended scheduling order in *Puma v. Brooks* directed, "All other dates are specified in the local civil rules." Order Granting Stipulated Motion to Modify the Scheduling Order at 3, No. C23-116, 2024 WL 2091382 (W.D. Wash. Jan. 24, 2024), ECF No. 118.

[2] As here, the amended scheduling order in *Cascade Yarns* directed, "All other dates are specified in the local civil rules." Order Setting Trial Date and Related Dates at 1, No. C10-861, 2013 WL 6729471 (W.D. Wash. Dec. 5, 2013), ECF No. 992.

Third, even accepting the premise that the boilerplate language in the revised scheduling order obliquely obliterated all established deadlines in the case—a stretch to say the least—Defendants (who are represented by counsel) could not reasonably have believed that the deadline for expert disclosures would still be ahead when dispositive motions were fully briefed. Rather, any new deadline for expert disclosures would necessarily have passed sometime before April 3, 2025, the reset deadline for motions challenging expert witness testimony. *See* Dkt. No. 43 at 2. It is Defendants' position—that the Court set the deadline for disclosing experts a month *after* the deadline for challenging them—that "make[s] no sense." To advance such a logically untenable theory, without acknowledging the legal authority cited by Plaintiff or providing any of their own, borders on frivolity and is a waste of the Parties' time and the Court's. Defendants' request to find that the expert disclosure deadline was May 6, 2025, is DENIED.[3]

### 2.    Whether The Late Expert Disclosure is Excusable Under Rule 37(c)(1)

Defendants argue that their late disclosure of Dr. Homayoun was justified because they reasonably believed the deadline was May 6, 2025, and because Plaintiff is "advancing a demonstrably rebuttable premise" that "only recently crystallized" and that Defendants "must be given an opportunity to rebut." Dkt. No. 107 at 12–13. Defendants assert that Dr. Homayoun's addition is unlikely to disrupt trial, and suggest that Plaintiff will not be prejudiced because the scope of Dr. Homayoun's proposed testimony is narrow, he will be produced for deposition, and "there are almost three months until trial[.]" *Id.* at 12.

//

//

---

[3] As a final note, it appears that even this deadline would not have rendered the expert disclosure timely. While Defendants repeatedly assert that they disclosed their expert report to Plaintiff on May 6 (*see* Dkt. No. 107 at 2, 5, 11, 12; *see also* Dkt. No. 108-3 (May 9, 2025), email from Collin Greene to Xiang Li) at 4), they reveal in footnotes that the report was actually emailed to opposing counsel after midnight on the morning of May 7, 2025. Dkt. No. 107 at 5 n.1, 11 n.2, 12 n.3. But May 7 is not May 6. Though this lateness was slight, Defendants neither ask the Court to excuse it nor offer any explanation. *See generally id.*

1    Defendants' arguments are unavailing. First, as already explained, it would not have been

2    reasonable for Defendants to believe the expert disclosure deadline was May 6, 2025. To the

3    extent that Microsoft's (in)ability to prevent or respond to unauthorized activations of its

4    software "only recently crystallized" when Defendants deposed Ms. Coulter in April, this is

5    entirely due to Defendants' own lack of diligence in waiting to schedule this deposition until

6    nearly the end of discovery and in failing to address questions critical to their "implied customer

7    license" defense to Plaintiff in written discovery. *See* Dkt. No. 83 at 7–8. Learning new

8    information shortly before trial is a natural consequence of taking an eleventh-hour deposition; it

9    was always foreseeable that Defendants might discover new information in their deposition of

10   Ms. Coulter, and it was known that no additional discovery time was available to develop this

11   information further. To the extent that Defendants were prejudiced by any irregularities in Ms.

12   Coulter's deposition, the Court has already provided Defendants with a remedy. Dkt. No. 109 at

13   5. Defendants insist that the "the entirety of June and July" provides "ample time" for the Court

14   to rule on this motion, Plaintiff to Depose Dr. Homayoun, and the Parties to provide

15   supplemental briefing on the motion for summary judgment "without resetting trial." Dkt.

16   No. 112 at 5. But this vision is impossible to reconcile with the many other things that must

17   happen before trial begins on August 4, not least of all the Court's consideration and disposition

18   of Plaintiff's motion for summary judgment, which would have to be delayed pending any

19   supplemental briefing.

20   Allowing Defendants to offer their expert at this late stage would inevitably delay trial.

21   "Disruption to the schedule of the court and other parties . . . is not harmless. Courts set such

22   schedules to permit the court and the parties to deal with cases in a thorough and orderly manner,

23   and they must be allowed to enforce them, unless there are good reasons not to." *Wong v.*

24   *Regents of the Univ. of Cal.*, 379 F.3d 1097, 1105 (9th Cir. 2004). Particularly under the

circumstances of this case, where Plaintiff seeks an injunction and Defendants profit from

maintaining the status quo, it is clear that Plaintiff would be prejudiced by postponing the

resolution of this case. Defendants have not shown that this prejudice can be cured. Nor, under

all the circumstances, can the Court confidently find there was no "bad faith or willfulness"

behind the late disclosure and Defendants' related requests. Accordingly, the Court DENIES

Defendants' request to excuse their late expert disclosure.

**B.      Defendants' 56(d) Application and Request for Additional Briefing**

As part of their summary judgment response, Defendants ask the Court to "continue its

ruling on summary judgment until after the Expedited Joint Motion is decided upon, and once

the relief granted to Defendants has been afforded (along with any additional supplemental

briefing on the MSJ that may be required)." Dkt. No. 101 at 11. This request does not mention

the need for, or possibility of, introducing additional expert testimony. *Id.* In the instant motion,

Defendants ask for leave to submit "supplemental briefing and evidence," including evidence

from the supplemental Rule 30(b)(6) deposition and Dr. Homayoun's report, "on the limited

issue[]" of whether Microsoft has the technical ability to determine authorization at the time of

activation. Dkt. No. 107 at 9. The Court addresses these requests together.

It is within the discretion of a district court to grant or deny a request made under Rule

56(d), and such discretion must be exercised before ruling on a motion for summary judgment.

*See Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006); *Garrett

v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).[4] In general, a "district

---

[4] Defendants assert that "it is an *abuse* of discretion to deny a continuance of where the record shows (1) the movant *diligently* pursued previous discovery opportunities and (2) how allowing *additional* discovery would have precluded summary judgment[,]" but cite in support only *Clark*, 460 F.3d at 1178–79. Dkt. No. 107 at 9. The court in *Clark* did not opine on the parameters of a district court's discretion to grant or deny a Rule 56(d) request, so long as it properly considered its merits before ruling on summary judgment. In *Clark*, the district court had denied the 56(d) request as moot without reaching the merits, and thus did not exercise its discretion at all. While this was

court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *Zawacky v. Cnty. of Clark*, No. C22-5101, 2023 WL 34596, at *1 (W.D. Wash. Jan. 4, 2023) (quoting *State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). However, "[d]enial of relief pursuant to Rule 56(d) is proper if the movant fails to comply with the requirements of Rule 56(d) or if the movant has failed to conduct discovery diligently." *Barmakszian v. State Farm Mut. Auto. Ins. Co.*, No. C23-10519, 2024 WL 4868271, at *5 (C.D. Cal. Oct. 2, 2024) (collecting cases).

A party making a 56(d) motion "must establish via affidavit that '(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.' Specificity is important—the Court must be able to ascertain from the affidavit why the requisite discovery would defeat summary judgment." *Zawacky*, 2023 WL 34596, at *1 (cleaned up) (first quoting *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018), then citing *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (denying relief under 56(d) to party whose "request for a continuance did not identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment")).

Here, Defendants submitted a 56(d) affidavit, signed by counsel Craig A. Hansen. Dkt. No. 103. The relevant portion of this affidavit, for the purpose of examining its sufficiency under Rule 56(d), is its third paragraph:

> Defendants assert that by allowing customers of TSPE . . . to download, install, activate, and continuously use Microsoft's software through the use of purportedly "illicit" product keys . . . ,

---

error, the Court of Appeals commented that such error "might be . . . excuse[d]" where a party has "failed to pursue the discovery sought" or moves for additional discovery "only *after* the deadlines for discovery or submission of dispositive motions had passed." *Id.* at 1179.

Microsoft created an implied license for those customers. If Defendants are [allowed a limited supplemental 30(b)(6) deposition], I believe they will gather additional evidence supporting their implied customer license theory. Indeed, if Microsoft can impose additional limitations on the activation of its software but chooses not to, that is highly relevant to showing that Microsoft is actually allowing, and indeed, enabling, the very behavior about which it complains. Thus, before ruling on Microsoft's Motion for Summary Judgment ("MSJ"), the Court should first rule on the parties' Expedited Joint Motion to allow Defendants to obtain the additional facts needed to oppose this MSJ.

*Id.* at 2. Defendants' affidavit succeeds in identifying the information to be sought through additional discovery and reasonably asserts that these facts would be "highly relevant to showing that Microsoft is actually allowing, and indeed, enabling, the very behavior about which it complains." However, the affidavit does not explain, as is required by Rule 56(d), how such a showing would preclude summary judgment. Thus, the requirements of Rule 56(d) have not been met.

"Despite [Defendants]' failure to comply with the formalities of Rule 56(d), Rule 6(b)(1) provides the Court with discretion to" grant a 56(d) request upon a showing of good cause. *Zawacky*, 2023 WL 34596, at *1 (footnote omitted). Here, however, the Court cannot find good cause to allow additional briefing or further delay consideration of the motion for summary judgment because Defendants have not been diligent in pursuing the information sought in the original or supplemental Rule 30(b)(6) deposition and have not shown that that information is necessary to defeat summary judgment.

First, Defendants were not diligent in pursuing the information they now claim is necessary to support their affirmative defense. The need for this information did not arise out of some revelation in the course of discovery, but is inherent to the implied customer license theory as Defendants have framed it. Nor is the defense itself a recent development: it is Defendants

1    who insist that this theory has always been a part of their case, and was asserted, however

2    cryptically, as part of the Nineteenth Affirmative Defense in their answer to the complaint. Dkt.

3    No. 81 (response to motion for protective order) at 12. As such, it was Defendants' responsibility

4    to collect the evidence they would need to support this defense. Yet, Defendants conducted no

5    written discovery on Microsoft's relevant technical abilities, seeking this information only

6    through a Rule 30(b)(6) deposition at the very end of discovery. *See generally* Dkt. No. 83. It is

7    these choices, first and foremost, that have led to any insufficiency of evidence Defendants must

8    now face, and the Court will not reward this lack of diligence by granting them another chance to

9    argue their case against summary judgment.

10         Second, the information Defendants seek is not necessary to defeat summary judgment.

11    In seeking summary judgment, Plaintiff bears the initial burden of production and must "either

12    produce evidence negating an essential element of the [Defendants'] claim or defense or show

13    that [Defendants do] not have enough evidence of an essential element to carry [their] ultimate

14    burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

15    1099, 1102 (9th Cir. 2000). To defeat summary judgment, the non-moving party must "designate

16    'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S.

17    317, 324 (1986) (quoting previous version of Fed. R. Civ. P. 56(e)) Defendants at this stage need

18    not show their facts are more convincing, or they are likely to prevail at trial; however, "a

19    complete failure of proof concerning an essential element of the nonmoving party's case

20    necessarily renders all other facts immaterial." *Id.* at 323. Pursuant to the language of Rule 56(a),

21    Defendants must show that there is, and Plaintiff must show there is not, a "genuine dispute as to

22    any material fact" that will determine the outcome of the case.

23         Typically, at summary judgment, all discovery has been completed, relevant evidence is

24    in the record, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*,

497 U.S. 871, 888–89 (1990). Here, however, the Court is in an unusual situation, as one limited area of discovery is still open: Microsoft's technical ability to deny activation of its software (or to deactivate it) when a key or token is used without authorization. Defendants have one last shot, at the supplemental 30(b)(6) deposition, to gather evidence on this topic that will be admissible at trial. They have indicated, with their attempted proffer of Dr. Homayoun, the kind of evidence they hope to discover: that "there are technically feasible methods available to validate product key use and user authorization at the point of activation" but that Microsoft made a choice not to employ these security measures." Dkt. No. 107 at 10. But even without this evidence, Defendants have already shown they possess some facts demonstrating a genuine dispute of fact as to whether Microsoft could, but does not, determine whether key use is authorized at the point of activation. For example, Ms. Coulter testified at her deposition that Microsoft "can block product keys for a number of reasons," that "Dreamspark keys may be blocked for activation for unauthorized use because Microsoft has already identified them in another investigation," but that Microsoft doesn't deploy its resources to "to create a system of checks for every program and every key type." Dkt. No. 94-3 (Deposition Excerpts) at 12, 17, 21. Plaintiff, on the other hand, has produced evidence that "at the time of activation, Microsoft has no way of determining the identity of the user and whether the user has a license to use the product." Dkt. No. 88 (Coulter Declaration) at 5–6. To carry their burden at summary judgment, Defendants need only to prove that there is a "genuine dispute" of fact, and that this dispute is "material" to their affirmative defense. It is Plaintiff's burden to demonstrate "that there is an absence of evidence to support [Defendants'] case." *Celotex*, 477 U.S. at 325.

If Microsoft's technical ability to deny unauthorized key use is indeed material to a legitimate affirmative defense that would shield Defendants from liability, there is no reason to allow them additional briefing on the issue; they have already shown they possess evidence

demonstrating a genuine issue of fact. Defendants have had an opportunity to include this evidence in their summary judgment briefing and to argue that this issue of fact is material to a legitimate and applicable affirmative defense. *See* Dkt. No. 101 at 12–13. If they prevail on this argument, summary judgment cannot be granted. On the other hand, if, as Plaintiff argues, the Court can dispose of the defense based on the law and on facts that are not disputed (*see* Dkt. No. 110 at 16)—in other words, if Microsoft's technical ability is immaterial—there is also no reason to allow Defendants additional briefing. Defendants have had a full and fair opportunity to present their legal arguments that the "implied customer license" defense exists, that it applies here if Defendants can prove the facts they seek regarding Microsoft's technical ability, and that it will shield Defendants from liability on all counts. *See* Dkt. No. 101 at 11–15. To allow Defendants a second opportunity to make any arguments they failed to raise or develop by the applicable deadlines, despite their ability to do so, would unjustly prejudice Plaintiff and delay the case.

The summary judgment motion is fully briefed. The Court will consider oral argument, but it does not require additional briefing by the parties. Defendants' request to present additional briefing is DENIED.

### III.    CONCLUSION

Accordingly, Defendants' motion (Dkt. No. 107) and Rule 56(d) request (Dkt. 101 at 11) are DENIED.

Dated this 12th day of June, 2025.

Tana Lin
United States District Judge